## UNITED STATES *v.* ELLIS.

*(District Court, W. D. Arkansas. July 6, 1892.)*

1. INTRODUCING LIQUOR INTO INDIAN COUNTRY—LAGER BEER.
    Section 2139, Rev. St., provides that "every person who * * * introduces, or attempts to introduce, any spirituous liquors or wine into the Indian country shall be punishable," etc. According to the true sense of the words "spirituous liquor," as used in this statute, lager beer is comprehended by its terms, and it is spirituous liquor, and its introduction into the Indian country was intended by the statute to be prohibited, and the words "spirituous liquor" are comprehensive enough to embrace lager beer.

2. CONSTRUCTION OF STATUTES—PENAL LAWS.
    It is true there can be no constructive offenses, and penal laws are to be construed strictly; yet they are not to be construed so strictly as to defeat the obvious intention of the legislature. The true rule in the construction of all statutes is to search out and follow the true intent of the legislature, and to adopt the sense of the words which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the legislature. Courts, in the construction of penal statutes, will give them a fair and reasonable construction, according to the legislative intent expressed in the enactment. They will, upon the one hand, refuse to extend the punishment to cases which are not clearly embraced in them, and, on the other, they will equally refuse, by any mere verbal nicety, forced constructions, or equitable interpretation, to exonerate parties plainly within their scope.

*(Syllabus by the Court.)*

At Law. John Ellis was indicted for introducing liquor into the Indian country.

*Wm. H. H. Clayton,* U. S. Dist. Atty.

*Frederick & Rutherford* and *J. B. Forrester,* for defendant

PARKER, District Judge, (*orally charging the jury.*) The indictment in this case charges that the defendant on the 1st day of January, A. D. 1892, in the Choctaw Nation, Indian country, within the western district of Arkansas, did then and there unlawfully introduce into the Indian country, in said district, spirituous and intoxicating liquors, to wit, 10 gallons of lager beer, contrary to the form of the statutes, etc. The indictment was drawn under section 2139 of the General Statutes of the United States, which provides, first, "that no ardent spirits shall be introduced under any pretense into the Indian country;" "that every person who sells, exchanges, gives, barters, or disposes of any spirituous liquors or wine to any Indian under the charge of any Indian superintendent or agent, or introduces or attempts to introduce any spirituous liquor or wine into the Indian country, shall be punishable by imprisonment," etc. This statute was enacted on the 9th day of July, 1832, —60 years ago day after to-morrow, if I am not mistaken. It is a section of the law that, in my judgment, is to be construed in the light of contemporaneous history, in the light of the condition of things then and the condition of things now. In order that we may get at the purpose of the congress of the United States in enacting this statute, and that we may interpret—not construe—the words used, (because I do not think there is any ground for construction, but that it is simply a question of interpretation that arises out of the statute,) we have the right to apply the rules that are prescribed by the highest court of the country to be used in the interpretation, or construction, if you please, of statutes. In the first place, as I said to the grand jury, (and I have a right to tell you this, because it is a matter of public history, and therefore a matter that the court takes judicial notice of,) one of the great objections on the part of these people to being removed from their homes in the older states, where there was a higher civilization surrounding them than there would be out in this then wild country, was that it was a frontier country,—a country that had to be settled by the pioneer,—where police regulations were not so effective as they would be in older states; and that caused them to ask that the government of the United States should pledge them security and protection in their new homes, if they consented to go. Intoxicating liquor was one of the things that they recognized as the greatest evil to them and their people; and that this court takes judicial notice of, because it is a part of public history; one of the greatest evils, I say, because it has swept whole tribes out of existence. There are a few left of the Delaware tribe up in this Indian country. That tribe was at one time one of the most powerful people of that race upon the continent, and they have been swept out of existence to a great extent owing to the use of intoxicants brought to them and given to them in order to steal from them their rights by the white men. There is now left of that powerful tribe of people only about 400. The wise and good men who were the leaders of these Indian people knew the baneful influence of this destructive power of drink, and they asked that the government of the United States should not only say in its treaties that they should be

protected,—they and their young men, and their people generally,—but that laws should be enacted making it a penalty upon the part of the white man, or the Indian man, or any other man, to introduce into that country that which would destroy them. And my Brother KNOWLES is right when he says in the Montana case, *In re McDonough*, 49 Fed. Rep. 360, that the manifest purpose of this statute was to prevent intoxication. If that position be correct, we have the key which opens the way to the correct interpretation of this law. Wherever we may find that which produces intoxication, if that substance comes within the definition of spirituous liquors, we have that which has been prohibited, and which has been said by the statute shall not be introduced. The words "ardent" and "spirituous" are used indiscriminately as having the same meaning. If not, the section becomes nonsense. Why would the congress of the United States expressly prohibit for any purpose the introduction of ardent spirits into this Indian country, and fail to provide a penalty as to any other class of liquors that did not comprehend ardent spirits? That would be foolish. We are never to construe a law as nonsense when it can be avoided, but we are, rather, to construe all of its terms as having force. There is no trouble about the rule for the construction of statutes. The supreme court of the United States, almost every year of its existence, has had that question before it, and very recently it has given us rules for the interpretation not only of ordinary statutes, but penal statutes as well. Then, manifestly, if the object intended by this statute was to prevent the destruction of Indians by drunkenness, as well as to prevent the commission of crimes which invariably follow as the consequence of drunkenness and debauchery in a country where the police regulations are limited, it should be construed so as to give effect to the object designed, and to that end all its provisions must be examined in the light of surrounding circumstances. This has been very recently declared to be the correct rule of construction laid down in the case of *In re Ross*, 140 U. S. 453, 11 Sup. Ct. Rep. 897. This whole doctrine with regard to the construction of statutes, and especially penal statutes, has been laid down by the supreme court of the United States in the case of *U. S.* v. *Lacher*, 134 U. S. 624, 10 Sup. Ct. Rep. 625, wherein it is said:

"As contended on behalf of the defendant, there can be no constructive offenses, and, before a man can be punished, his case must be plainly and unmistakably within the statute. But though penal laws are to be construed strictly, yet the intention of the legislature must govern in the construction of penal as well as other statutes, and they are not to be construed so strictly as to defeat the obvious intention of the legislature. *U. S.* v. *Wiltberger*, 5 Wheat. 76; *U. S.* v. *Morris*, 14 Pet. 464; *American Fur Co.* v. *U. S.*, 2 Pet. 358, 367. 'It appears to me,' said Mr. Justice STORY, in *U. S.* v. *Winn*, 3 Sumn. 209, 211, 'that the proper course in all these cases is to search out and follow the true intent of the legislature, and to adopt that sense of the words which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the legislature.'"

The object of the statute certainly was to prevent drunkenness, and to protect these people against drunkenness and debauchery, such as you

have heard described by the witnesses in this case, and such as come to the knowledge of this court and this jury as having produced death in that country within the last 10 days in more than one case. The manifest purpose of the legislature was to prevent this.

"To the same effect is the statement of Mr. Sedgwick, in his work on Statutory and Constitutional Law, (2d Ed.) 282: 'The rule that statutes of this class are to be construed strictly is far from being a rigid or unbending one; or, rather, it has in modern times been so modified and explained away as to mean little more than that penal provisions, like all others, are to be fairly construed according to the legislative intent as expressed in the enactment; the courts refusing, on the one hand, to extend the punishment to cases which are not clearly embraced in them, and, on the other, equally refusing, by any mere verbal nicety, forced construction, or equitable interpretation, to exonerate parties plainly within their scope.' This passage is quoted by Baron BRAMWELL in *Attorney General* v. *Sillem*, 2 Hurl. & C. 532, as one 'in which good sense, force, and propriety of language are equally conspicuous, and which is amply borne out by the authorities, English and American, which he cites.' *Foley* v. *Fletcher*, 28 Law J. Exch. 100, 106; *Nicholson* v. *Fields*, 31 Law J. Exch. 233; Hardc. St. Law, p. 251. And the reason for the less rigorous application of the rule is well given in Maxwell on the Interpretation of Statutes, (2d Ed.) p. 318, thus: 'The rule which requires that penal and some other statutes shall be construed strictly was more rigorously applied in former times, when the number of capital offenses was one hundred and sixty or more, when it was still punishable with death to cut down a cherry tree in an orchard, or to be seen for a month in the company of gypsies. But it has lost much of its force and importance in recent times, since it has become more and more generally recognized that the paramount duty of the judicial interpreter is to put upon the language of the legislature, honestly and faithfully, its plain and rational meaning, and to promote its object. It was founded, however, on the tenderness of the law for the rights of individuals, and on the sound principle that it is for the legislature, not the court, to define a crime and ordain its punishment.'" *U. S.* v. *Lacher, supra.*

These are the rules, and the correct rules, that bear on the subject of the construction of statutes, or their interpretation.

The question now comes up whether or not this statute is capable, reasonably and rationally, of such interpretation as to make the words "any spirituous liquors" include that which produces intoxication, called "lager beer." The evidence in this case which is not contradicted shows certain elementary things that are necessary to make out an offense. The proof shows that the defendant received large quantities of this lager beer; that from the evidence he was apparently an agent for its reception. Under the law requiring certain thin s to exist to make a man guilty of violating this statute against the introduction of liquor it is contemplated that, if a party goes out and gets spirituous liquors, and takes them into that country, that is a violation of the law by his direct act; if he sends out and gets them, and they are sent in to him on his order, that is a case where he is a party to the direct act of introduction, and is as much responsible as though he had done every act connected with the introduction; as much responsible as though he had gone out and got it and carried it in with his own hands. If he is the agent there for the reception of it, and knowingly receives it when it is sent in by some-

body else, he is then a *particeps criminis* to the act of introduction; he is responsible for whatever consequences attach under the law to an act of that kind. If the evidence in this case shows that this defendant received beer in quantities there from the outside, it was sent to him, and he received it from the car shipped in, you have the right to presume that he did it knowingly; that he received it because he made the order for it. You have a right to presume, further, from that state of facts, as reasonable men, that the act of introduction was his act as well as the act of the shipper on the outside, and as well as the act of the railroad company which took it in there. They are all responsible under the law. The cars that carried this beer into that country, under the laws of the United States, are subject to confiscation, and the man who managed that car which brought in this beer in question is subject to the penalties of this statute, and the man in St. Louis, whoever he may be, is responsible, under the law, as an introducer, if the word "beer" be within the meaning of this statute. Then the defendant, if he occupies that relation to lager beer, and it is a substance that comes within this statute, is a party who has introduced, and he would be a party who has violated the law.

The question comes up as to whether or not this article is embraced within that expression. There is a difference of opinion among the courts—and respectable courts, too—as to the meaning of these words, that originated, in my judgment, from considering the kind of spirits with reference to the method of making these different intoxicants rather than to their qualities. This statute, if it means anything that was intended to effectuate any purpose that was good in its tendencies, certainly intended to prohibit that which would be injurious,—that which would intoxicate. Beer is defined to be a preparation made by fermentation, which contains alcohol. Alcohol, by the definition of Mr. Webster, is that which may be called a "spirituous quality." It is the spirituous quality of whatever substance it is in. Beer is thus defined: "An alcoholic liquor made from any farinaceous grain, but generally from barley, which is first malted and ground, and its fermentable substance extracted by hot water." Cent. Dict. 503. It is defined as an article that contains alcohol. Lager beer is so called because it is contemplated that it has been stored some time after being made. The material question under the statute is whether or not it is intoxicating. If it produces that result, according to my construction of this law, taking into contemplation its purpose, the reason for its enactment, the condition to which it was intended to apply, it comes within the definition of the word "spirituous," which Mr. Webster says means having an active power or property; and, as used in this statute, I think it means having an active power or principle of intoxication. This court has always held that whisky, brandy, beer, and wine, or anything that had the spirituous or intoxicating principle in it, or any substance of which it was a part, so that when it was used in that country as a beverage it would produce that result, came within the provision of this statute; and the position of the court in the construction of this statute is borne out by

the opinion of the very able jurist who delivered the opinion in the North Carolina case, where a statute of like words was construed, where the words of the statute were precisely similar to the words used in this statute, where that court, after deliberation, after reasoning on the case, and after comprehending the condition that was in existence where this beer was attempted to be sold, the people of North Carolina having the power to establish prohibition if they saw proper, as we have in this state, and it seems that they did establish it, and the language of the statute giving them the power to establish prohibition was exactly the language of this statute in question. It prohibited the sale, without the consent of the people, of any spirituous liquor. This statute does the same thing; it prohibits the introduction into the Indian country of any spirituous liquor; and I say that court in North Carolina took into consideration the condition there that was sought to be changed, and construed or interpreted the meaning of this statute, arriving exactly at the same conclusion this court does. It is a case that is well reasoned. It is a case that shows where these gentlemen who have arrived at an opposite conclusion have fallen into an error; and the error arises from the fact that they conclude that to make a spirituous liquor you must distill it, when the word "spirituous" does not mean any such thing as that. It is defined as a liquor that is ardent; that is, active in its principles,— that will produce intoxication. That is the definition given by Mr. Webster, and that has reference to the quality of the liquor; but when you come to the origin of it, when you come to the method by which it is made, you find that spirituous liquors—liquors having the ardent principle in them, having the intoxicating principle in them—are sometimes made by distillation, and sometimes by fermentation. The intoxicating principle called "alcohol" is also made, as this judge clearly shows, by fermentation, and it is only separated by distillation from the other qualities or properties. If it be true, then, that the intoxicating principle, or the alcoholic principle, is that which makes it a spirituous liquor, and that it can be made by fermentation, and it exists in lager beer, and the court tells you judicially that it does,—it is a fact, the law says, that may be taken notice of by the court, that the alcoholic principle is in lager beer,—I say, if it be true that it is produced by fermentation, and that is the case, then why is it necessary that we should look any further when the article is complete as a spirituous liquor when it contains alcohol? It is not distillation that gives it the spirituous quality. Spirituous means active; it means lively; it means something that will produce active or lively results. It does not mean, necessarily, something that has been run through the worm of a still. To my mind, a definition of that kind is simply ridiculous and absurd, when you consider that fermentation is the process which extracts from the grain—from the malt, from the barley, from the corn, or from whatever is used—the principle that gives it a spirituous quality,—the principle that makes it alcohol, the principle that produces intoxication. It is fermentation that does it, and whenever you have a fermented liquor producing alcohol, you have a spirituous liquor, in the sense of that

statute, and you have a liquor that is prohibited by this statute, because it produces intoxication, because it produces vices, because it produces crime, and because, if let alone, and not restricted, it will drown out these people whom the government have solemnly time and again promised to protect and support as against this evil and all others.

I will now read to you in full the North Carolina case to which I have just called your attention:

## "*State* v. *Giersch.* [4 S. E. Rep. 193.]

"The defendant, Giersch, was indicted for selling wine and beer in Raleigh township, Wake county, North Carolina, when by the law the sale of spirituous liquors was prohibited. Giersch had been granted a license by the county commissioners to sell vinous and malt liquors. On the trial the court instructed the jury to return a verdict of not guilty, on the ground that wine and beer were not spirituous liquors. The state appealed.

"MERRIMON, J. It appears that the sale of spirituous liquors was prohibited within Raleigh township, within the county of Wake, as provided and allowed by the statute, (Code, §§ 3110–3116;) that, while the sale of such liquors was so prohibited, the defendant sold for a price, to a certain person within that township, one glass of lager beer, and also one glass of wine, both being intoxicating liquors, and containing alcohol produced by fermentation, not by distillation. and neither containing any foreign admixture of spirituous liquors; that at the time of such sale the defendant had a license granted to him by the sheriff of the county named, in pursuance of an order made by the county commissioners of the same county while the sale of spirituous liquors was so prohibited, purporting to allow him to sell vinous and malt liquors within the township named, at the place where the sales mentioned were made. The defendant was indicted for so selling the lager beer and wine mentioned, and pleaded not guilty. On the trial the jury rendered a special verdict, the material facts of which are above set forth. The court, being of the opinion that the sale of lager beer and wine was not a violation of the statute so prohibiting the sale of spirituous liquors within the township named, directed a verdict of not guilty to be entered, which was done, and thereupon judgment was entered for the defendant, from which the solicitor for the state appealed to this court. The statute, (Code, §§ 3110–3116,) as applied in this case, prohibits the sale of spirituous liquors—any spirituous liquors—within Raleigh township, in the county of Wake; and the question presented for our decision by the assignment of error in the record is, what is meant by the words ' spirituous liquors,' ' any spirituous liquors,' as used and applied in the statute to be interpreted, and particularly, does the inhibition extend to the sale of wine and lager beer? It is contended by the counsel for the defendant that these words extend to and embrace only distilled spirits. On the other hand, the attorney general insists for the state that they are used in a comprehensive and remedial sense, and embrace all kinds of intoxicating liquors, including wine and lager beer, except in so far as domestic wine is expressly excepted. The term ' liquor,' in its most comprehensive signification, implies fluid substances generally, such as water, milk, blood, sap, juice; but in a more limited sense, and its more common application, it implies spirituous fluids, whether fermented or distilled, such as brandy, whisky, rum, gin, beer, and wine, and also decoctions, solutions, tinctures, and the like fluids in great variety. The term ' spirit' or ' spirits ' has a general meaning as applied to fluids, mostly of a lighter character than ordinary water, obtained but not produced by distillation, but, as applied particularly to liquors, they signify the essence, the extract, the purest solution, the highly rectified spirits, the pure alcohol contained in them. The spirit

of liquors is really the alcohol in them. It is this characteristic, this essential element, that makes them spirituous, that gives to all liquors of whatever kind their intoxicating quality and effect. Alcohol this essential element in all spirituous liquors—is a limpid, colorless liquid. To the taste it is hot and pungent, and it has a slight, and not disagreeable, scent. It has but one source, the fermentation of sugar and saccharine matter. It comes through fermentation of substances that contain sugar proper, or that contain starch, which may be turned into sugar. All substances that contain either sugar or starch, or both, will produce it by fermentation. It is a mistake to suppose, as many persons do, that it is really produced by distillation. It is produced only by fermentation, and the process of distillation simply serves to separate the spirit—the alcohol—from the mixture, whatever it may be, in which it exists."

I repeat again that you do not have to have distillation to make spirituous liquors. The fact, then, that distillation does not exist in the preparation of this lager beer, is not a material condition to the existence of it as a spirituous liquor. It is not distillation that determines its spirituous character; in other words, it is the quality of the article which is the evidence of whether it has in it the ardent principle called "alcohol," the spirituous quality that gives it the name of spirituous liquor.

"That what we have thus said is, in substance, true and correct, every one knows who is familiar with the terms defined, the nature of alcohol, the method of its production, and who has accurate knowledge of the essential elements and qualities of spirituous liquors. 'Spirituous' means containing, partaking of, spirit; having the refined, strong, ardent, quality of alcohol in greater or less degree. Hence spirituous liquors imply such liquors as above defined,—as contain alcohol, and thus have spirit,—no matter by what particular name denominated, or in what liquid form or combination they may appear."

What use would it be for the courts of the United States to enforce the statutes enacted by congress prohibiting that brandy and whisky be introduced into that country, and permit tons and car loads of this material that makes men drunk? It never was intended, never was contemplated, and there is no forced construction about it. When you take the definition of the word "spirituous" liquor as given by this eminent court I have referred to, you have exactly that which applies sensibly and rationally to the interpretation of that section of the statute in question, taking into consideration the purpose sought to be accomplished by the congress which passed it.

"Hence, also, distilled liquors, fermented liquors, and vinous liquors are all alike spirituous liquors. These liquors, respectively, may have different degrees of spirit in point of fineness and strength. Distilled liquors may be stronger or weaker according to the quantity and quality of the alcohol in them, and so of the other kinds mentioned. We know from common observation and knowledge, and it is a generally admitted physical fact, not denied in this case, that lager beer and wine contain alcohol, and generally in such quantity and degree as to produce intoxication. These liquors are therefore spirituous, and obviously come within the meaning and are embraced by the words 'spirituous liquors,' as used in the statute, unless there is something in the latter that shows that these words were intended to have a more

limited application, and to exclude such beer and wine. The closest reasonable scrutiny of the statute, its terms, phraseology, connections, and purposes, shows no such narrow application of the words 'spirituous liquors' employed in it as to exclude such beer and wine. But we think the contrary plainly appears. The terms used are, severally and taken together, broad and sweeping, not exceptive or limiting but in a single respect, presently to be mentioned; and the manifest purpose is to prevent and suppress drunkenness, and the attendant evils produced by the free use of intoxicating spirituous liquors. The terms are not 'any distilled spirituous liquors,' not 'any fermented spirituous liquors,' but they are 'spirituous liquors,' and 'any spirituous liquors.' How sweeping! The purpose being obvious, the language of the statute, its parts and its whole, must receive such reasonable interpretation as will effectuate the purpose."

It was obviously the purpose of this statute to keep out of the Indian country liquors which would cause intoxication in that country, and destroy the people. It was to suppress it, to prohibit its being taken in there. Then we are to interpret or construe the statute by that rule of interpretation or construction which would enable us to effectuate the purpose of those who passed that law.

"This is the rule of interpretation of constant application to all statutes, whatever their nature or purpose. *Hines* v. *Railroad Co.*, 95 N. C. 434. Here there is no need of strained interpretation of terms or phraseology or purpose. These are plain, easily seen, and understood. As we have seen, 'spirituous liquors' embrace lager beer and wine by reason of their nature, and the effects produced by them. If the purpose of the statute is to prevent drunkenness by prohibiting the sale of spirituous liquors, is it not plain to the mind of the simplest observer that such purpose would only be partially served by preventing the sale of only distilled liquors? Fermented and vinous liquors—lager beer and wine—are spirituous liquors, and produce intoxication and drunkenness as certainly as distilled liquors produce the like effect. It simply requires the greater quantity of them to do so. Can it be said with any show of reason that the legislature would have intended to cripple, prevent, and hinder its purpose by prohibiting the sale of one kind of intoxicating spirituous liquors, and not another? Can any just and fair mind reach the absurd conclusion that it intended to prevent drunkenness by prohibiting the sale of distilled spirituous liquors, and to allow, and, in practical effect, encourage, drunkenness by the toleration of the sale of fermented and vinous spirituous liquors?"

That language may apply to this statute. Can it be said, without absurdity, that it was the purpose of the congress of the United States to stop up the spigot of the barrel that contained this principle of drunkenness, and to leave the head open?

"And if, for any reason, it had such mixed, contradictory purpose, would it not have said so,—so provided as to leave no doubt as to such partial purpose? The presumption is it intended to further and accomplish, not hinder and defeat, its plain purpose. And this is made the more manifest by an exceptive provision in respect to domestic wines manufactured in this state from certain fruits mentioned. It is expressly provided in section 3110 of the statute cited above that such domestic wines may be sold 'in bottles, corked or sealed up, and not to be drunk on the premises,' etc. But it is further provided that no person shall 'sell any of said wines to any person who is a minor,' and, moreover, this exception does not extend to wines which contain any foreign admixture of spirituous liquors, and shall only ap-

ply to such wines as derive their ardent spirit from vinous fermentation.' This exceptive provision is very significant in various aspects of it. It points by necessary implication to the purpose of the statute to prevent drunkenness, in that such wines—domestic wine that has no foreign admixture of spirituous liquors—shall not be sold to a minor at all.• It shall not be drunk on the premises when it is sold. And to prevent this, it must be corked or sealed in bottles. Now, why these cautionary regulations, if not intended to prevent excessive drinking—drunkenness--arising from the use of any spirituous liquor, even domestic wines? If it was intended that fermented spirituous liquors generally might be sold, why were they not excepted? Why were not lager beer and light wines generally excepted? Why except only domestic wines, the sale of which is so cautiously guarded? Further, if the term 'spirituous liquors,' as used in the statute, embraces only distilled liquors, then this cautious exceptive provision is wholly meaningless and nugatory. In that case it serves no purpose at all, because without it all fermented liquors might be sold. Can any intelligent mind believe that the legislature intended this provision should be thus meaningless? Surely not. And treating it as serving the intelligent purpose plainly specified, does it not show beyond serious question that the terms 'spirituous liquors' so used in the statute were not intended to embrace only distilled liquors? It cannot be said that this exception is part of the statute in question by mistake, as suggested. It was enacted at the session of the general assembly of 1874-75, and it has been a part of the statute in its present connection since 1883, and the legislature has not repealed or modified it, although it has repeatedly amended the statute in other respects. We may advert, in this connection, to the general fact of common knowledge that the legislature, the legal profession, and the people generally who took note of the subject understood that the inhibition of the statute in question extended to fermented as well as distilled liquors. The contrary has not been insisted upon, so far as we know, by any one, until the decision of this court in *State* v. *Nash*, 97 N. C. 514, 2 S. E. Rep. 645, in which the chief justice simply suggested a doubt in respect to the extent of the inhibition in a connection not at all material. He expressly declared that any question in that respect was not decided. What he said was scarcely said *obiter.* It was not, nor was it intended to be, authority, and so every intelligent lawyer must have understood. *Attorney General* v. *Bank*, 5 Ired. Eq. 71, and cases there cited.

"What we have said finds strong support in the decision of this court in *State* v. *Lowry*, 74 N. C. 121, in which it was expressly held, in construing the statute (Code, § 1076) forbidding the sale of spirituous liquors by a measure less than a quart, that the inhibition extended to and embraced fermented liquors, and upon the ground that they are spirituous liquors. It interpreted a statute the purpose of which was to regulate the sale of spirituous liquors and raise revenue. The purpose of the statute before us is to prohibit such sales, and it therefore has the greater weight and point. The learned counsel for the defendant, on the argument before us, seeing the force of this case, contended that it is not satisfactory, and ought to be disregarded. We cannot hesitate to think otherwise, because of the brief, cogent reasons stated in the opinion, as well as the reasons stated above. The decision is authority not to be disregarded for light, or even plausible, reasons. It was made by a very able court, and the able judge who wrote the opinion was a learned lawyer, familiar with the legislation and statutory law of this state, and he was as well a scholar familiar with the nature, meaning, power, and compass of words, whether applied in statutes or otherwise.

"It was likewise contended on the argument that the inhibition surely could not be treated as extending to all liquors that contained spirit, because very many liquors contain so small a percentage of alcohol as that it is

scarcely perceptible; that the inhibition only applied to strong distilled liquors, and therefore not to lager beer or wine. This argument is without force. As we have seen, the purpose of the statute is to prevent and suppress drunkenness, and promote sobriety. The inhibition, therefore, extends to such spirituous liquors, whether fermented or distilled, as by their free use produce intoxication. Hence, when it is of common knowledge and observation that a particular kind of spirituous liquors in question produces intoxication, then the court may so declare, but if it is doubtful whether or not the liquor be such, then a question of fact is raised for the jury, as was decided in *State* v. *Lowry, supra.* See, also, *State* v. *Packer*, 80 N. C. 439. The inhibition of the statute under consideration, and we may add other like inhibiting statutes, unless otherwise provided in them, extend and apply to all such spirituous liquors, however denominated, whether fermented or distilled, as, by the free use of them, ordinarily produce intoxication. This appears from the nature, terms, and purpose of such statutes, and the causes of common knowledge that give rise to their enactment. It may be added that the general assembly, at its session of 1887, recognized the statutory provision under consideration as having the meaning we attribute to it, and acted upon it."

The court fully adopts the language used by that court. The court takes into consideration the purpose of the legislature in passing that act, just as we are to take into consideration the purpose of congress in enacting this statute. It was to prevent drunkenness. When we come to apply the words, we find that we have a meaning that is rational, that is sensible, that consummates fully the purpose of the statute, and which is authorized by the authors of lexicons defining the term "spirituous liquors." I say to you in this case, that if you find that the defendant from the evidence was the party who received that liquor there that had been shipped to him, that he had apparently received it as one interested in it, going to show that he had knowledge of the fact, —and I think that is virtually admitted by his counsel in this case,— it is your duty to find the defendant guilty. If you find that lager beer, such as was introduced in evidence in this case, was introduced either directly by this defendant going out and getting it, or by his receiving it as agent, your duty is to convict him, because the court charges you that in the light of this law this is spirituous liquor, and that as such the introduction of it would be a violation of the statute, and your duty would be to convict the defendant,—to say that " we, the jury, find the defendant guilty as charged in the indictment." This is a very important statute. Its rigid enforcement tends largely to prevent the commission of the highest crimes in that country, as every one knows who is at all conversant with the condition of that country. You take the law from the court, you see what the facts are, and you apply the law to the facts as you find them, and in that way you arrive at your verdict. The fact that the government of the United States may have licensed this traffic in there has nothing to do with your or my enforcement of this statute. That comes under the revenue law. There is no provision of the revenue law prohibiting the issuing of license for the sale of whisky in that country, but the fact that that may have been done cannot legalize the introduction of it into that country. It has nothing to do with this statute. It is not connected with it in any way, and

the construction of the revenue law by the revenue department of the government is not to be taken as a construction of this statute. It does not look to this statute when it issues license, and its construction of it has no binding force upon this court, even as being advisory, because it is not a statute that that department of the government is called upon to administer. I ask you to take these facts into consideration, and, if you find that the defendant in any one of these ways I have named was connected with this lager beer, I charge you that it is spirituous liquor, and that it comes within the meaning of this statute, and your duty would be to find the defendant guilty, because such a state of case makes a case that is conclusive in the law; certainly it makes a case that carries it beyond a reasonable doubt.

Defendant excepted to charge of court, and also excepted to the court refusing to charge as requested to by defendant.